PUBLISHED

# UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

INEZ SALES; DEBRA M. MILLER,
Plaintiffs-Appellees,

v.

ALPHONSO L. GRANT, in his
individual capacity and in his
official capacity as a member of the
City of Lynchburg Electoral Board;
JOHN E. MASON, JR., in his
individual capacity,
Defendants-Appellants,

and

DAVID T. PETTY, JR., in his official

No. 99-1650

capacity as member of the City of
Lynchburg Electoral Board; CITY OF
LYNCHBURG ELECTORAL BOARD;
CAROL SPENCER READ; ARELIA
LANGHORNE, in her official capacity
as a member of the City of
Lynchburg Electoral Board; JOHN
COBB, in his official capacity as a
member of the City of Lynchburg
Electoral Board; ANNE MARIE
MIDDLESWORTH, in her official
capacity as general registrar of the
City of Lynchburg,
Defendants.

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Jackson L. Kiser, Senior District Judge.
(CA-96-27-L)

Argued: May 4, 2000

Decided: August 16, 2000

Before WIDENER, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed in part, motion to dismiss granted in part and denied in part, and remanded by published opinion. Judge Luttig wrote the opinion in which Judge Williams concurred. Judge Widener wrote an opinion concurring in part and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Henry Smith Keuling-Stout, KEULING-STOUT, P.C., Big Stone Gap, Virginia, for Appellants. David Edward Constine, III, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees. **ON BRIEF:** Anthony F. Troy, Kimberly W. Daniel, MAYS & VAL-ENTINE, L.L.P., Richmond, Virginia, for Appellees.

_____

**OPINION**

LUTTIG, Circuit Judge:

Defendants John Mason and Alphonso Grant, members of the Electoral Board of the City of Lynchburg, Virginia, appeal from the district court's quashing of their motions for summary judgment. In those motions, the defendants asserted qualified and sovereign immunity from suit for allegedly causing plaintiffs Inez Sales and Debra Miller, former Lynchburg Assistant Registrars, not to be reappointed. Sales and Miller have moved to dismiss this appeal, arguing that the appellants have waived their right to assert either immunity. For the reasons that follow, we grant the motion to dismiss in part, deny that motion in part, affirm in part, and remand for further proceedings.

I.

After they were not reappointed as Assistant Registrars for the City of Lynchburg, Sales and Miller filed an action, under 42 U.S.C. § 1983, alleging that Electoral Board members Mason and Grant violated their constitutional rights by causing them not to be reappointed because of their political affiliations.[1]  Although the General Registrar, rather than the Electoral Board or its members, possesses the power to hire Assistant Registrars under Virginia law, see Va. Code § 24.2-112, Sales and Miller claim that Mason and Grant improperly used their influence over the General Registrar to control her appointment decision.

Mason and Grant responded to the complaint by filing a motion to dismiss, which did not mention qualified or sovereign immunity, and which was denied. They then filed separate answers to the complaint, in which each defendant listed qualified immunity, but not sovereign immunity, among their affirmative defenses. Mason and Grant next moved for summary judgment, in which motion they failed to assert either qualified or sovereign immunity. The district court did not rule on the motion, and a four-day trial ensued, during which Mason and Grant never once asserted either claim of immunity. After both the plaintiffs and the defendants had presented their evidence, Mason and Grant moved for dismissal under Federal Rule of Civil Procedure 50, on grounds unrelated to qualified or sovereign immunity, and the district court granted that motion.

_____

[1] The appellees filed suit against Mason and Grant in both their individual capacities and in their official capacities as members of the Electoral Board. Grant remains a defendant in both capacities, but, by order of the district court, Mason is now a defendant in only his individual capacity, because he is no longer a member of the Electoral Board.

The section 1983 complaint also named a third member of the Electoral Board, the General Registrar, and the Electoral Board itself as defendants. However, Mason and Grant were the only parties to file the summary judgment motions that are the subject of this appeal or to file a notice of appeal from the quashing of those motions, and are thus the only defendants-appellants now before this court.

This court reversed and remanded for a new trial in Sales v. Grant, 158 F.3d 768 (4th Cir. 1998) ("Sales I"). During the course of Sales I, Mason and Grant never asserted either qualified or sovereign immunity. On remand, Mason and Grant moved for summary judgment, asserting that they were immune from suit under the doctrines of qualified and sovereign immunity. The district court quashed these motions, explaining that this court had remanded the case for a new trial, and that it was "inappropriate for the defendants to raise the defenses of qualified immunity and Eleventh Amendment immunity at this late date." J.A. 311.

Mason and Grant now appeal from the quashing of their motions for summary judgment. Sales and Miller have moved to dismiss this appeal, arguing that Mason and Grant have waived their right to assert both qualified and sovereign immunity.

II.

Mason and Grant first claim that they are entitled to qualified immunity from the suit brought by Sales and Miller. Sales and Miller argue in their motion to dismiss that Mason and Grant have waived their right to assert this affirmative defense by failing to pursue it prior to remand after Sales I. We agree, and therefore grant the motion to dismiss with respect to Mason and Grant's assertion of qualified immunity.

It is well-settled that qualified immunity is an affirmative defense, and that "the burden of pleading it rests with the defendant." Crawford-El v. Britton, 523 U.S. 574, 586-67 (1998) (quoting Gomez v. Toledo, 446 U.S. 635, 639-641 (1980)). Although Mason and Grant technically pled their qualified immunity defense in their answers to the initial complaint, they never explained the legal or factual basis for their claim of qualified immunity prior to remand after Sales I. Indeed, their mention of qualified immunity in their answers consisted of only a single, cursory sentence on the matter, contained in a listing of several affirmative defenses: "The individual defendants are protected by qualified immunity from suit." Answer of Defendant Grant at 4; Answer of Defendant Mason at 4. And, as recounted above, although the defendants had numerous other opportunities prior to remand to assert their claim of qualified immunity, they failed to do

4

so. Specifically, Mason and Grant omitted any mention of qualified immunity from their pre-trial motions to dismiss and for summary judgment, from the presentation of their case during a four-day trial, and from their post-trial motion for dismissal. As such, prior to remand after Sales I, the notion that qualified immunity might play a role in Mason and Grant's defense was mentioned to the district court only once, and, even on that occasion, the defendants failed to provide any explanation as to how or why qualified immunity might apply. Under these circumstances, we have no trouble concluding that the defendants waived their right to press seriously their claim of qualified immunity for the first time after remand.

Although this court has not addressed the question whether a claim of qualified immunity is waived under the exact factual circumstances present here, our conclusion finds support in this court's decision in Suarez Corp. Industries v. McGraw, 125 F.3d 222 (4th Cir. 1997), in which we held that a claim of qualified immunity can be waived if not squarely presented to the district court, and that qualified immunity cannot be asserted for the first time on appeal. Id. at 226. As in Suarez, the defendants here never pressed their claim of qualified immunity prior to appeal, and we have no doubt that the result in Suarez would have been the same had the defendants there cursorily mentioned qualified immunity in their initial answer. It is thus clear that, under Suarez, Mason and Grant could not permissibly have asserted qualified immunity on appeal in Sales I . To allow Mason and Grant seriously to pursue their qualified immunity claim for the first time on remand after Sales I would be to forgive their waiver of that defense on the mere fortuity that this court chose to remand the case after the first appeal. This we decline to do.

In concluding that Mason and Grant have waived their right to assert qualified immunity, we do not hold categorically that a section 1983 defendant must pursue the defense of qualified immunity on every occasion possible in order to preserve his right to raise that defense later in the proceedings. Rather, we hold only that where, as here, a defendant only cursorily references qualified immunity in his answer to a section 1983 complaint, and thereafter fails to mention, let alone seriously press, his assertion of that affirmative defense, despite filing several dispositive motions in the district court and despite participating in a trial on the merits of the section 1983 claim,

5

that defendant may not actively pursue his claim of qualified immunity for the first time on remand after appeal.

III.

Mason and Grant next argue that they are entitled to Eleventh Amendment immunity from the suit for monetary damages brought by Sales and Miller. Because Sales and Miller seek an award of damages against Mason and Grant in only their individual capacities, we conclude that Mason and Grant are not entitled to protection from suit under the Eleventh Amendment.[2]

In asserting sovereign immunity from the imposition of monetary liability against them in their individual capacities, Mason and Grant do not challenge the well-established rule that the Eleventh Amendment generally does not bar suits for damages against state officers, so long as those officers are sued in their individual capacities. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Rather,

_____

[2] As noted above, while Mason is presently a defendant in this action in only his individual capacity, Grant remains a defendant in both his individual and official capacities. We understand Grant (along with Mason) to have asserted Eleventh Amendment immunity only as to the monetary relief sought against him in his individual capacity. The only reference to the official capacity portion of the lawsuit in the portions of Mason and Grant's briefs that discuss sovereign immunity is to the principle that, as state officers, they cannot be personally obligated to pay monetary judgments entered against them in their official capacities. See Appellants' Br. at 28. Sales and Miller do not contest this point, and indeed have only sought monetary relief against Mason and Grant in their individual capacities. See J.A. 24 (complaint).

The only relief sought by Sales and Miller against Mason and Grant (and at this point, only Grant) in their official capacities is that they (along with the other current members of the Electoral Board) be ordered by the district court to direct General Registrar Read to fill the two Assistant Registrar positions. See id. Although there is no apparent reason why sovereign immunity from this request for prospective injunctive relief would be available to Mason and Grant, see, e.g., Edelman v. Jordan, 415 U.S. 651, 667-68 (1974), because we do not understand them to have asserted such immunity, we leave it to the district court to address any such assertion of immunity that might be made on remand.

6

Mason and Grant contend that because, under Virginia law, any monetary judgment against them would be paid out of a state-funded insurance plan, see Va. Code § 2.1-526.8, by a check drawn on the state's general treasury, the suit is barred by the Eleventh Amendment. We disagree.

Mason and Grant's argument amounts to an assertion that a state may convert any or all individual capacity suits, to which the protections of sovereign immunity would otherwise be inapplicable, into official capacity suits, with all the attendant protections of the Eleventh Amendment, by announcing (via statute or otherwise) that it will indemnify governmental officers sued in their individual capacities and by creating an insurance plan to finance that indemnification. As Sales and Miller point out, and Mason and Grant themselves recognize, see Appellants' Reply Br. at 15, the courts of appeal have decisively rejected this argument. See, e.g. , Jackson v. Georgia Dep't of Transp., 16 F.3d 1573, 1577-78 (11th Cir. 1994) ("We conclude that the existence of a voluntarily established liability trust fund does not make the state the real party in interest in this action and that the trust fund does not extend the state's Eleventh Amendment immunity to its employees sued in their individual capacity."); Benning v. Board of Regents of Regency Univs., 928 F.2d 775, 778-79 (7th Cir. 1991) ("[T]he state cannot manufacture immunity for its employees simply by volunteering to indemnify them. . . . [A] state's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign."); Griess v. Colorado, 841 F.2d 1042, 1046 (10th Cir. 1988) ("[T]he state's position boils down to an attempt unilaterally to extend its sovereign immunity to all of its employees by the assumption of an illusory obligation for indemnification. . . . The state's constitutional immunity cannot be artificially manipulated in this fashion."); Spruytte v. Walters, 753 F.2d 498, 512 & n.6 (6th Cir. 1985) ("A government may not manufacture immunity for its employees by agreeing to indemnify them."); Demery v. Kupperman, 735 F.2d 1139, 1146-49 (9th Cir. 1984). **3**

_____

**3** As in the present dispute, in at least three of the cases cited above, the state assumed by statute an obligation to indemnify its employees for awards entered against them in their individual capacities. See Jackson, 16 F.3d at 1576 & n.4; Griess, 841 F.2d at 1045; Demery, 735 F.2d at 1146-47 & n.5.

7

In Beardsley v. Webb, 30 F.3d 524 (4th Cir. 1994), this court agreed that a state's promise of indemnification cannot invest governmental officers, sued in their individual capacities, with sovereign immunity that they would not otherwise enjoy. See id. at 531. Although we noted in Beardsley that the defendant there had not established that the insurance plan that would indemnify him was state-funded, see id. at 531-32, we do not believe that the fact that such has been established here warrants a conclusion different from that reached in Beardsley. To rule otherwise would be to permit a state to eviscerate completely the rule that governmental officers are not immune from monetary liability when sued in their individual capacities. And this evisceration would come at no cost to the states, for, under the rule proposed by Mason and Grant, once a state promised to indemnify officers sued in their individual capacities, the "insurance fund" established to finance the promised indemnification would not have to contain any funds at all, given that all suits in federal court against state officers would be prohibited absent consent by the state.

In concluding that a promise of indemnification does not alter the non-immune status of state officers sued in their individual capacities, we derive support from the Supreme Court's decision in Regents of the University of California v. Doe, 519 U.S. 425 (1997), in which a unanimous Court held that the fact that the federal government would indemnify a state university for litigation costs and for any adverse judgment did not alter the Eleventh Amendment immunity enjoyed by the university. Id. at 431. In so holding, the Court rejected the notion that the question whether an entity was protected by the Eleventh Amendment should be converted "into a formalistic question of ultimate financial liability," and made it clear that none of the reasoning in its precedents "lends support to the notion that the presence or absence of a third party's undertaking to indemnify the agency should determine whether it is the kind of entity that should be treated as an arm of the State." Id. at 430-31. The Court thus concluded that "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant" to the Eleventh Amendment inquiry. We are confident that, were the Court confronted with a case, such as the one now before us, in which defendants sued in their individual capacities asserted sovereign immunity based on a state's

8

promise of indemnification, the Court would decline to allow that promise to invest the defendants with immunity that they would not otherwise enjoy, just as it declined to allow the mechanism of indemnification to divest an entity of immunity that it otherwise enjoyed in Regents.

We therefore conclude that Mason and Grant are not protected by the Eleventh Amendment from the suit for monetary damages that Sales and Grant have filed against them in their individual capacities.**4**

CONCLUSION

For the reasons stated herein, we grant the appellees' motion to dismiss the appeal with respect to the appellants' assertion of qualified immunity, deny the motion to dismiss with respect to the appellants' claim of sovereign immunity, and affirm the judgment of the district court with respect to the appellants' assertion of sovereign immunity. We also remand the case for further proceedings consistent with this opinion and the opinion of this court in Sales I .

It is so ordered

WIDENER, Circuit Judge, concurring and dissenting:

I.

I concur in the result only of the majority decision as to Eleventh Amendment immunity.*

_____

**4** In rejecting Mason and Grant's claim of Eleventh Amendment immunity on the merits, we necessarily deny Sales and Miller's motion to dismiss this appeal with respect to the Eleventh Amendment claim. However, we express no opinion on the argument, included in the motion to dismiss, that Mason and Grant waived their right to assert sovereign immunity by failing to make that assertion prior to remand after Sales I.

*The majority decision, for example, affirms the judgment of the district court with respect to Eleventh Amendment immunity. Slip, p.8. But that judgment refused to consider the subject. The majority then decides the Eleventh Amendment question on its merits, having just affirmed the district court which refused to decide the question.

9

II.

For some reason not stated in the opinion, the majority expresses "no opinion on the argument, included in the motion to dismiss, that Mason and Grant waived their right to assert sovereign immunity by failing to make that assertion prior to remand after Sales I." Slip p.9, n.4. While the district court, in its opinion of May 17, 1999, similarly avoided the question of waiver, announcing that it "declined to entertain new summary judgment motions by the defendants," in its order of May 25, 1999, certifying the appeal as frivolous, and even considering Eleventh Amendment immunity, it described "the defense giving rise to the appeal has been waived because it should have been raised and decided prior to the first trial in this case." And in that order, indeed, it went on to reason that it agreed with the plaintiffs "that these defendants may raise these motions [Eleventh Amendment and qualified immunity] with the court post-trial" because "this approach would promote judicial efficiency and economy."

The reasons for the treatment of the issue by indirection, both by the district court and the majority, are yet to be explained and, in all events, neither has recognized the decisions of the Supreme Court and our court that Eleventh Amendment immunity may be raised at any time, even on appeal. Edelman v. Jordan, 415 U.S. 651, 677-78 (1976); Ford Co. v. Department of the Treasury, 323 U.S. 459, 467 (1945); In Re Collins, 173 F.3d 924, 927 (4th Cir. 1999).

III.

As to the question of qualified immunity, I respectfully dissent.

The majority depends on Suarez Corp. Industries v. McGraw, 125 F.3d 222 (4th Cir. 1997), for the proposition that a claim of qualified immunity can be waived "if not squarely presented" to the district court and that qualified immunity cannot be asserted for the first time on appeal. Suarez did hold that where a claim of qualified immunity had nowhere been mentioned in the case until appeal, it could not be mentioned for the first time on appeal, but it did not hold that the reason was that the matter was not "squarely presented to the district court" (italics added). It only used the word "squarely" in deciding that the question had not been presented. In Suarez the defense had

not been mentioned until appeal, squarely or otherwise, therefore we followed long-time precedent in not permitting qualified immunity, as any other affirmative defense, to be raised for the first time on appeal.

That strained construction of Suarez is justified in the majority opinion by describing the defense as only "cursorily mentioned." The emphasis of the majority on what it describes as cursory treatment is shown by its dependence on that adjective, or adverb, as the case may be, in three successive paragraphs of its opinion. Slip p.4 and 5.

However, on p.4 of the answers of both of the defendants is the following affirmative defense:

> 51. The individual defendants are protected by qualified immunity from suit.

Cursive, or cursory, as used here, means "delivered in an offhand or casual manner without great attention to detail." Webster's Third New International Dictionary, p.558. I suggest that the defendants could hardly have been more explicit in their defense, and that the adjective used by the majority to denigrate the defense is badly out of place.

IV.

The majority concludes that a party who makes a motion for a Rule 50 judgment as a matter of law and prevails, but ultimately has that decision reversed by an appellate court and remanded for new trial, effectively waives the right to assert a previously pleaded affirmative defense during the new trial. In effect, this holding requires that a defendant moving for a Rule 50 judgment assert all possible defenses in his or her motion, as any remaining defenses will be deemed waived. Even more out of place, the majority decision requires a district court to pass on all the theories asserted even if it considers one of them dispositive, as here. Because the defendants in this case explicitly pleaded qualified immunity in their answer, I would hold that defendants have not waived their right to assert this defense on remand. This is particularly true in view of the district court's order of May 25, 1999 that the defense could be raised after a new trial but not before, which I mention later.

11

While an affirmative defense such as qualified immunity must be asserted in a responsive pleading, it is "sufficiently raised for purposes of Rule 8 by its bare assertion." Santos v. District Council of New York City, 619 F.2d 963, 967 (2d Cir. 1980). See also Kulzer v. Pittsburgh-Corning Corp., 942 F.2d 122, 125 (2d Cir. 1991) (statute of limitations affirmative defense "need not be raised with any rigorous degree of specificity" and bare assertion in answer is sufficient to prevent waiver). Thus, Mason and Grant's answer, pleading the affirmative defense of qualified immunity, entirely satisfied the requirements of Rule 8(c).

Despite the fact that the defendants effectively pleaded qualified immunity as an affirmative defense, the majority holds that the defendants waived their right to assert qualified immunity on remand prior to the retrial because they did not mention qualified immunity, other than in their answers, in subsequent motions to the district court or during the trial in Sales I. On the contrary, I submit that a defendant who moves for, and is granted, summary judgment based on one ground, in no way waives his other affirmative defenses that have been pleaded, and these defenses are available in the event the case is remanded for a new trial, as here.

Here, the trial court did not rule on the defendant's summary judgment motion, and took no action disposing of the case until the defendant's Rule 50 motion was made after receiving the evidence at trial. It is beyond dispute that had the trial court initially denied an early summary judgment motion claim of qualified immunity, defendants would have been able to assert qualified immunity either in a subsequent motion or at trial because qualified immunity may be raised at various and successive stages of a dispute. See Behrens v. Pelletier, 516 U.S. 299, 306-07 (1996). A defendant may first raise a qualified immunity defense at the pleadings stage in a motion to dismiss, and "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Next, a defendant may move for summary judgment and is entitled to such "if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." Mitchell , 472 U.S. at 526. Finally, "Mitchell makes it clear that . . . decisions with respect to dismissal

12

or summary judgment, if adverse, do not preclude the interposition of the defense of immunity as a defense to liability on the merits." Kennedy v. City of Cleveland, 797 F.2d 297, 299 (6th Cir. 1986).

The problem addressed in this case has been discussed at length in the decision in Kennedy and in the discussion in Behrens v. Pelletier, as follows:

> While Mitchell did not say that a defendant could appeal from denial of a qualified-immunity defense more than once,[*] it clearly contemplated that he could raise the defense at successive stages:
>
> "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." 472 U.S., at 526 (citation omitted).
>
> Thus, Mitchell clearly establishes that an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a "final" judgment subject to immediate appeal. Since an unsuccessful appeal from a denial of dismissal cannot possibly render the later denial of a motion for summary judgment any less "final," it follows that petitioner's appeal falls within § 1291 and dismissal was improper.
>
> _____
>
> [* Footnote 2] Interestingly, however, Mitchell itself dealt with the second of two interlocutory appeals on immunity claims. See 472 U.S., at 515-519. Neither the Court of Appeals nor this Court assigned any significance to the successive aspect of the second appeal.

13

Behrens, 516 U.S. 299, 306-07 (1996) (italics in original).

A case on facts indistinguishable, for all practical purposes, from those here is Daingerfield Island Protective Society v. Babbitt, 40 F.3d 442 (D.C. Cir. 1994). In Babbitt, the court granted summary judgment to the defendant on grounds unrelated to its statute of limitations affirmative defense, which had been pleaded as a defense in defendant's answer. Babbitt, 40 F.3d at 444. The D.C. Circuit reversed the initial grant of summary judgment and remanded the case to the district court. On remand, the defendant again moved for summary judgment arguing that the action was barred by the statute of limitations. Babbitt, 40 F.3d at 444. This motion was granted, and the plaintiff again appealed, asserting that the defendant had waived its statute of limitations defense. Babbitt, 40 F.3d at 444. The D.C. Circuit held that merely pleading the affirmative defense in the answer satisfied Rule 8(c) and that the defendant did not waive its statute of limitations defense by failing to assert it before the first appeal. Babbitt, 40 F.3d at 444-45. As the court stated,"the government adequately raised the limitations defense in its answer-- it was not required to reassert the defense in its subsequent successful summary judgment motion." Babbitt, 40 F.3d at 445. I suggest that the D.C. Circuit correctly decided the issue and that the majority's decision to the contrary is not correct.

V.

In sum, in affirming the judgment of the district court, the majority not only goes against the advice of the Supreme Court, which is that questions of qualified immunity are better decided early rather than late, see Mitchell, 472 U.S. at 526, it holds against all authority that the merits of that defense should not be considered at all. Even the district court apparently relented and would have considered the defense post-trial, as indicated in its order of May 25, 1999.

I would vacate the judgment of the district court and remand the case with instructions to consider the defense of qualified immunity under Behrens and Kennedy v. City of Cleveland.

14